```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

**MARYLAND ELECTRICAL**
 **INDUSTRY HEALTH FUND, ET AL**  *

   **V.**                            *       **CIVIL NO. ELH-12-2644**

**RGS ELECTRICAL, INC.**
                                   *


*   *   *   *   *   *   *   *   *   *   *   *   *


### REPORT AND RECOMMENDATION

This is an action brought under Employee Retirement Income Security Act ("ERISA"). (ECF. No. 1). Plaintiffs are Maryland Electrical Industry Health Fund and associated trustees, Maryland Electrical Industry Pension Fund, Maryland Electrical Industry Severance and Annuity Fund, Maryland Electrical Joint Apprenticeship and Training Committee, National Electrical Benefit Fund, National Labor Management Cooperation Committee, Maryland Electrical Industry Labor Management Cooperation Committee and Local Union No. 24, International Brotherhood of Electrical Workers, AFL-CIO.  The defendant is RGS Electrical Inc., a signatory, and subject to a Collective Bargaining Agreement with Local 24.  (ECF No. 13).  Plaintiffs move for an entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against the defendant for failure to appear or

otherwise defend in this matter. (ECF No. 7).  The Clerk entered default. (ECF No. 8).

This case has been referred to the undersigned magistrate judge in accordance with 28 U.S.C. § 636 and Local Rule 301 and 302, to review a default judgment and/or make recommendations concerning damages. (ECF No. 9). The Court has requested and has received additional supporting materials. (ECF Nos. 11 and 13). For the reasons set forth below, the undersigned recommends that plaintiffs' motion be GRANTED and that damages be awarded as set forth herein.

## I. Default Judgment Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.

In deciding whether to grant a motion for default judgment, the Court must first consider the following three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct. Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3rd Cir. 1987); see also Smith v. Bounds, 813 F.2d 1299 (4th Cir. 1987)(relying on these factors in determining whether a default judgment merited reconsideration).

The Court must also determine whether plaintiff has alleged legitimate causes of action. In reviewing plaintiffs' Motion for Entry of a Default Judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. <u>Ryan v. Homecomings Fin. Network</u>, 253 F.3d 778, 780- 81 (4th Cir. 2001). It, however, remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. <u>Id.</u>; see also 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3rd ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the Court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate amount of damages. <u>Ryan</u>, 253 F.3d at 780-81. Unlike factual allegations as to liability, the Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. <u>Credit Lyonnais Secs. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 154 (2nd Cir. 1999). In so doing, the Court may conduct an evidentiary hearing. FED. R. CIV. P. 55(b)(2). The Court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for the award. See, e.g., Stephenson v. El- Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing

may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)(finding that a court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

**II. Preliminary Factors**

The Clerk of Court having filed entry of default on November 26, 2012 (ECF No. 8), the undersigned concludes that the procedural requirements for entry of default judgment have been\ met. Moreover, because the defendant has failed to file any responsive pleadings or otherwise show cause as to why default should not be granted, the Court is "not in a position to judge whether any delay was the result of culpable misconduct." Sambrick, 834 F.2d at 73. Further, defendant's failure to appear deprived plaintiffs of any other means of vindicating their claim and plaintiffs would be prejudiced if default is not granted.

**III. Discussion**

**A. ERISA Claims**

Plaintiff employee benefit plans, committees and Local 24 bring the instant action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132, and the Labor Management Relations Act, as amended ("LMRA"), 29

U.S.C. § 1851. (ECF No. 1). They move to collect delinquent and late – paid contributions, delinquent remittances and late – paid remittances, liquidated damages, interest and attorneys' fees and costs that they allege are owed to the employee benefit plans committees and Local 24 as a result of the defendant's violation of the applicable Collective Bargaining Agreements and applicable trust agreements. (ECF No. 7-1).

### 1. Standing

ERISA Section 502(a)(3) provides that a civil action may be brought by a "participant, beneficiary or fiduciary" to "obtain appropriate equitable relief . . . to redress . . . violations or . . . to enforce any provisions" of the statute or terms of the plan. 29 U.S.C. § 1132(a)(3). An individual is a fiduciary under ERISA to the extent the person "exercises any discretionary authority or control respecting management of [a] plan or control respecting management or disposition of its assets." 29 U.S.C. § 1002 (21)(A). In addition, ERISA Section 502(d)(1) provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1). This action is brought by the trustees of three employee benefit plans who administer the funds for the benefit of the participants and beneficiaries of the funds. (ECF No. 1, ¶ 5, 7, 9,). As such, they are empowered to bring an action on behalf of the plan under ERISA § 502(a)(3) and (d)(1).

**2. ERISA § 515**

ERISA § 515 provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement. 29 U.S.C. § 1145.

In a collection action based on section 515, a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents. Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997).

The relevant controlling document here is the Collective Bargaining Agreement between the Local 24 Union and the National Electrical Contractors Association of the Baltimore Division, Maryland Chapter. (ECF No. 1, ¶¶ 12-14; ECF No. 13). The Agreement establishes the terms and conditions of employment for employees of signatory employers. (ECF No. 7-3). The current agreement covers the period from June 1, 2011 through May 31, 2014. RGS is a signatory to the agreement. (ECF No. 1, ¶ 12; ECF No. 13).

Under the Collective Bargaining Agreement, defendants must contribute a specified amount for each hour defendant is obligated to pay compensation to its employees. (Art. X(A)(3),

(B)(3), (C)(3)).  These amounts differ for each of the funds Local 24 and related entities, among the plaintiffs. (ECF No. 1, ¶ 13-14) Additionally, the governing Agreements and Declarations of Trust provide certain additional payments, such as liquidated damages, in the event that required contributions and remittances a not timely paid.  (ECF No. 1, ¶¶ 16-24).

To support their factual allegations, plaintiffs rely on the declaration of Claire M. Kratz, administrator of the funds, related entities and Local 24.  (ECF No. 7-3).  Ms. Kratz was responsible for the custody and control of the Funds and related entities and Local 24. (Id.).

Based on Ms. Kratz's account of the records, plaintiffs assert that "RGS has failed to pay the contributions and remittances due to the Funds and related entities for the months of July, August, September and October, 2012, and failed to pay the contributions and remittances due to the Funds and related entities for the months of March, April, May, June, August and September, 2012 in a timely manner, and owes Plaintiffs the contributions, liquidated damages and interest in the amount of $50,396.57 plus total attorneys' fees and costs in the amount of $3,227.50 as stated in Plaintiffs' Motion for Judgment by Default. The amounts due by Defendant RGS Electrical, Inc. as stated in the Plaintiffs' Motion for Judgment by Default are correct. The amounts were computed after credit was given for all

payments made by Defendant RGS Electrical, Inc. The amounts due were calculated based on remittance reports filed by RGS." Thereafter, RGS paid certain contributions and filed certain remittances, resulting in a significantly reduced damages demand. (ECF No. 11).

Similarly, the plaintiffs rely on the declaration of Stephen Schultz, Director of Audit and Compliance of the National Electrical Benefit Fund ("NEBF"). (ECF No. 7-4). Mr. Schultz averred that RGS failed to submit required remittance reports and contributions due to NEBF.

These unchallenged assertions of fact constitute legitimate causes of action under ERISA § 515.

### 3. Damages

Plaintiffs base their claim for damages on ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), which provides:

(2) In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan—

  (A) the unpaid contributions,
  (B) interest on the unpaid contributions,
  (C) an amount equal to the greater of--
    (i) interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in
  an amount not in excess of 20 percent (or such higher
  percentage as may be permitted under Federal or State law)
  of the amount determined by the court under subparagraph
  (A),

  (D) reasonable attorney's fees and costs of the action, to be
  paid by the defendant, and
  (E) such other legal or equitable relief as the court deems

appropriate.

Relying on the declarations of Ms. Kratz, Mr. Schultz and an updated submissions of counsel (ECF No. 11), plaintiff's state that they are entitled to a total of $16,449.82 in liquidated damages, and interest for work months between March 2012 and September 2012, and attorneys' fees and costs. (ECF No. 7-3, 3 ¶ 7). Counsel has provided the Court with an explanation of a chart breaking down the amounts owed to each fund. (ECF Nos. 11 and 11-1).

Having reviewed all plaintiffs' submissions, the undersigned finds that the damages were properly calculated and therefore recommends that damages be awarded in the amount of $13,222.31 exclusive of attorneys' fees.

### 4. Attorneys' Fees

In an ERISA action, a district court has discretionary authority to award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "some degree of success on the merits." <u>Williams v. Metropolitan Life Ins. Co.</u>, 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted). The Court may employ a five-factor test as a general guideline in exercise of its discretion in determining whether to grant a request for attorneys' fees. <u>Quesinberry v. Life Ins. Co. of North America</u>, 987 F.2d 1017, 1029 (4th Cir. 1993). The five factors include: "(1) degree of opposing

parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions." Id. In order to properly determine an award of reasonable attorneys' fees, the Court must calculate the "lodestar amount" defined as a "reasonable hourly rate multiplied by hours reasonably expended." Grissom v. Mills Corp., 549 F.3d 313, 320–21 (4th Cir. 2008). The Court determines if fees are appropriate by assessing whether the hours worked were reasonable or include hours that were unnecessary or duplicative. The Fourth Circuit has adopted the 12 factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (1974) to consider when determining the reasonableness of attorney's fees. Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978). These include:

> the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> outset of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the

10

> experience, reputation and ability of the attorney;
> (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards
> in similar cases. Id.

Plaintiffs have provided an affidavit from Meghan C. Horn, an attorney at the firm of Abato, Rubenstein and Abato, P.A, and an attorney in this case, detailing the billing records generated in the case. (ECF No. 7-5). Ms. Horn, a December 2008 admittee to the Maryland bar, billed 11.25 hours at 225.00 an hour; Ms. Batt, a December 1998 admittee to the Maryland bar, billed 1.25 hours at $225.00 an hour.  An hourly rate of $225.00 is too high for Ms. Horn, who was admitted less than five years at the time the work was performed; an hourly rate of $175.00 is more appropriate.  See Local Rules, Appendix B 3.a (D. Md.). Accordingly, the undersigned recommends reducing the attorney fee component of the award by $562.50 (11.5 hours times $50.00 – the difference between the rate charged and the appropriate lesser hourly rate).  In addition to attorneys' fees, plaintiffs incurred a filing fee of $350.00 and a process server fee of $65. (Id. ¶ 7).  Accordingly, the undersigned finds that reduced attorneys' fees of $2665.00 and costs of $415.00 are reasonable and due and recommends that a total of $3080.00 be awarded in costs and fees, to be apportioned among funds related entities and Local 24.

**Conclusion**

For the reasons set forth above, the undersigned recommends that:

1. The Court GRANT plaintiff's Motion for Default Judgment. (ECF No. 7).
2. The Court award plaintiff $13,222.32 for all liquidated damages and interest for the months;
3. The Court award plaintiff's attorney's fees and costs of $3,080.00.

Date: 4/16/13

/s/
Susan K. Gauvey
United States Magistrate Judge